[Crim. No. 1539. Second Appellate District, Division Two.—June 29, 1928.]

THE PEOPLE, Appellant, v. J. M. KUDER et al., Respondents.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, for Appellant.

Arthur L. Veitch for Respondent Kuder.

Estudillo & Schwinn for Respondents Fishel.

P. N. McCloskey for Respondent Luke.

William Guthrie and R. E. Hodge for Respondent Bedford.

J. M. Friedlander, Corporation Commissioner, H. A. I. Wolch, Assistant Corporation Commissioner, and Vernon S. Gray, Deputy Corporation Commissioner, *Amici Curiae.*

CRAIG, J.—The respondents were tried before a jury in San Bernardino County upon a charge of having violated the Corporate Securities Act, and were convicted. They then moved the trial court for an arrest of judgment, which motion was granted upon the ground that the indictment failed to state facts sufficient to constitute a public offense. The People appealed from such ruling, and respondents moved this court for an order dismissing said appeal, which we denied on April 3, 1928 (90 Cal. App. 594 [266 Pac. 337]). The case is now before us upon its merits.

In the indictment which is the subject of this appeal the grand jury of San Bernardino County accused the five defendants of the crime of violation of the Corporate Securities Act [Stats. 1917, p. 673], ''a felony, committed as follows'': And the acts therein alleged to have been committed in violation of said statute were that on or about September 30, 1925, the defendants did wilfully, unlawfully, knowingly, fraudulently, and feloniously authorize, direct, and aid in the issue and sale of and cause and assist in causing to be issued, executed, and sold certain stock certificates and securities of a corporation known as Fishelton Farms Incorporated, consisting of 250 shares of its capital stock to themselves, in nonconformity with a permit of the commissioner of corporations authorizing such issue; and that with intent to violate said permit, the defendants issued and caused the issuance of said stock without demanding, obtaining, and receiving for and on behalf of the corporation, and without paying, remitting, or delivering to it cash therefor at par, so as to net the corporation par value at the selling price; and with intent to violate the terms of said permit, that the defendants used, expended and applied the cash obtained from the sale and issue of said stock for uses and purposes other than and contrary to the uses and purposes recited in the application therefor.

The commissioner's permit is made a part of the indictment, and recites that said corporation is authorized to sell and issue 250 shares of its capital stock to its five incorporators at par for cash, for the uses and purposes recited in its application, and so as to net the applicant the full amount of the selling price thereof.

■ Before the trial the defendants demurred, and thereafter moved in arrest of judgment, upon asserted grounds that the indictment charged two separate and distinct offenses, which should have been separately stated, first that of issuing and selling to themselves 250 shares of stock without paying to, or obtaining and receiving for, the corporation cash representing the full par value; and second, that of using and applying the proceeds of such sale to purposes other than those specified in the application and permit. And it was further contended that each such charge offset and justified the other, in that if they did not pay the value of said stock to the corporation, they could not have applied the proceeds of such sale to unlawful purposes, whereas if the latter charge were true they could not be guilty of selling the stock without receiving the purchase price on behalf of the corporation. The evidence tends to show, as a matter of fact, that the defendants, as officers of the corporation, issued 50 shares of the stock of their corporation to themselves, for which they gave checks upon a bank account wherein there were not sufficient funds to meet them, and in turn issued to themselves checks of the corporation for like amounts so that no moneys were in fact paid or misapplied.

From the holding herein which we think is inevitable it becomes unnecessary to consider the point advanced by respondents that the allegations of the indictment are contradictory, or that the commission of one of the alleged acts would render the commission of the other impossible. Section 14 of the Corporate Securities Act (Stats. 1917, p. 680, chap. 532) makes it an offense to issue or sell any security in nonconformity with a permit of the corporation commissioner, or to apply or cause to be applied the proceeds of the sale of securities to a purpose contrary to the provisions of a permit, or to fail to comply with any of the provisions of the act, or to conspire to violate said act. Hence, not only is it a violation of the Corporate Securities Act

to act contrary to its provisions in any one respect, but it is equally illegal and violative of the act to do so in all of them combined. To say that they are distinct offenses is equivalent to the assertion that an indictment charging the issuance of securities contrary to the provisions of a permit, and a failure to comply with the provisions of the act, would embrace two offenses, for each of which a separate sentence might be imposed.

Other similarly phrased statutes of this state have received repeated and consistent interpretations which render such views untenable. In *People* v. *Barnnovich,* 16 Cal. App. 427 [117 Pac. 572], an information based upon section 601 of the Penal Code was challenged upon the same grounds as those here asserted. Said section provides that one who maliciously deposits or explodes or attempts to explode under any structure which human beings usually inhabit any dynamite, etc., with intent to injure any human being, or by means of which a human being is injured, is guilty of a felony. Barnnovich was charged with having deposited an explosive under such a structure with intent to injure a person, and with intent to injure the property described in the information. The supreme court said:

"The information alleges two intents—one an intended injury to a person and the other an intended injury to property. It does not follow from this that the information charges two offenses as claimed by counsel for the defendant. Section 601 of the Penal Code, which defines the offense of which the defendant was convicted, enumerates a series of acts any of which separately or all together may constitute the offense. 'All such acts may be charged in a single count, for the reason that, notwithstanding each may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.' (*People* v. *Frank,* 28 Cal. 507; *People* v. *Leyshon,* 108 Cal. 440 [41 Pac. 480]; *People* v. *Swaile,* 12 Cal. App. 192 [107 Pac. 134].)"

*People* v. *Swaile, supra,* was also a prosecution under section 601 of the Penal Code, and the court there said that it is not improper in such cases to charge conjunctively the various acts constituting the offense which are disjunctively recited in the statute. *People* v. *Frank, supra,* involved a charge that the defendant "feloniously made, forged and

counterfeited, and aided and advised and encouraged another to make, forge and counterfeit'' an indorsement. In *People* v. *Leyshon, supra,* the defendant was charged with forging and passing a forged note. In each of these cases the same rule was invoked.

In *People* v. *Huber,* 64 Cal. App. 352 [221 Pac. 695], the defendant was charged with having violated the Motor Vehicle Act, in that while driving an automobile he collided with another person, that he unlawfully failed and refused to stop, or to render assistance to the person injured, or to carry said person to a physician or surgeon for medical or surgical treatment, and failed and refused to give to such person the number of his automobile, the name of the owner, or of the passenger therein. Upon the contention that the information did not comply with sections 950 and 951 of the Penal Code, and that it charged several offenses, it was held:

''It will thus be seen that the information is almost identical with the language used in section 21 of the Motor Vehicle Act. It is true that there are a number of specific things required to be done by that section in the event of a collision with or injury to a person on the highway, yet the information following the language of the statute, as above quoted, charged in fact but one offense. That but one offense is charged is clearly established by the case of *People* v. *Barnnovich,* 16 Cal. App. 427 [117 Pac. 572]. It is the failure to comply with any one of the requirements of said section that renders the person so failing amenable to prosecution. It is not alleged in the information that any assistance was necessary to be given to the injured person, but the information nevertheless charges a complete offense in that it is therein stated in both clear and concise language that the defendant did not stop his automobile and also failed and neglected to give the information required by the statute. Having charged sufficient to constitute an offense the demurrer was properly overruled, even though it be admitted that the information does not with sufficient certainty show that any assistance should have been given by the defendant to Steve Begley, the injured person.''

So in the case at bar respondents were charged with the offense denounced by the statute as a violation of the Corporate Securities Act, which itself is a felony as charged by the indictment under consideration, and which may be

committed in any one or more of the various ways specified. It does not appear that any money was paid to the corporation for the securities issued and sold, as required by the permit, which alone is sufficient to warrant the overruling of the demurrer, and the denying of the motion in arrest of judgment, in so far as this ground of attack is concerned. It is therefore immaterial to the issue thus presented whether or not other allegations of the indictment were true, or that had the jury found as a fact that the corporation received full par value for its stock, and that respondents misapplied the proceeds so received, the allegations of nonpayment would have been untrue. Had the indictment charged violations of all of the elements of the offense as defined in the act, it is obvious that the allegations would necessarily have been inconsistent, yet to convict upon all of them would not be necessary, since a violation of the Corporate Securities Act by noncompliance with any of its provisions or with a permit issued thereunder is sufficient to sustain the indictment, and to support a conviction thereon.

Many authorities are presented by respondents wherein statutes so worded as to embrace various distinct offenses, such as gambling, betting, pool selling, etc., were held to authorize a separate charge for a violation of each. Yet, as appears from a dissenting opinion in *People* v. *Thompson*, 111 Cal. 242 [43 Pac. 748], while in some cases such as sales of rum, brandy, whisky, or gin, distinct offenses may be committed, "it is not ill to charge in one count that the defendant did offer to sell and suffer to be sold intoxicating liquor." And in the same opinion it is further said that the "nature of the offense and of the act should be considered in determining whether or not a charge is double." In the instant case the defendants were alleged to have committed the "crime of violation of the Corporate Securities Act of the State of California, a felony, committed as follows," which in itself is an offense, and it is not attempted to be argued that had all of the allegations been consistent and in fact proved, the trial court could have imposed more than one penalty. We conclude, therefore, that the indictment charged one public offense, and sufficiently conformed to the sections of the Penal Code governing the form and contents of such a pleading.

It is next insisted that the Corporate Securities Act is unconstitutional. Respondents quote section 11 of article XII of the constitution, which provides: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void," and assert that this provision is self-executing. They then refer to the provision of article XII, section 24, that "The legislature shall pass all laws necessary for the enforcement of the provisions of this Article," and upon the latter predicate the claim that the act does not purport to provide for the enforcement of section 11, above quoted, because, unlike other similar enactments, its object and purpose are not specifically so stated. We think the laws passed by the legislature comply with and fulfill the constitutional mandate. Without question this provision of the constitution is self-executing to the extent that acts done in contravention of it are rendered illegal and void. The same declaration is contained in section 359 of the Civil Code, which provides that "No corporation shall issue stock or bonds, except for money paid," etc. All that can remain to be done is to give practical effect to these enactments by supplying the necessary legal administrative and executive machinery to compel compliance therewith. The act does this by providing that the commissioner of corporations shall make all necessary investigation of the applicant and its affairs, and if thereupon he finds that the proposed plan of business "is not unfair, or inequitable, that it intends to fairly and honestly transact its business, and that the securities that it proposes to issue and the methods to be used by it in issuing or disposing of them are not such as, in his opinion, will work a fraud upon the purchaser thereof, the commissioner shall issue a permit authorizing it to issue and dispose of securities, as therein provided," etc. As suggested by respondents, the prohibition of the constitution against the issuance of stock except for valuable consideration imports the right under reasonable and proper conditions to issue and dispose of such securities. And yet, notwithstanding this constitutional privilege, section 12 of the act here in controversy provides that a sale even for cash, without the permit required by section 6 thereof, shall subject the seller to a penalty of fine and imprisonment. That all of the initial

steps required by the act were complied with by the corporation and the commissioner is not denied. The applicant requested permission to dispose of its capital stock to the incorporators for cash, and a permit was issued, directing that it sell its capital stock to the persons designated, for full net cash to the corporation, which is in strict accord with the constitution, Civil Code and Corporate Securities Act. It is obvious that said act was intended to furnish the procedural system for enforcement of the constitutional safeguards to the purchasing public. Taken together, they constitute a single bulwark against the sale of worthless securities and other fraudulent practices, as well as guides for imprudent corporate officials, brokers, and purchasers in honest transactions. Such purpose and intention has been recognized by all of the decisions to which our attention is directed.

It is insisted, however, that the act transcends legislative powers by attempting to delegate, and to provide for the exercise of, legislative and judicial authority, by conferring upon the commissioner of corporations the duty of investigation, determination as to the conditions of issuance and sales of stock, and discretion in granting or denying permits. It is contended, in effect, that what is fair, just, and equitable business which will not work a fraud upon purchasers, and reasonable or necessary conditions which should be imposed in order to insure safe disposition of the proceeds of sales of stock, are questions for legislative determination, and that since article XII, section 11, of the constitution inferentially affords the right to issue and sell such securities, the legislature alone is empowered to ordain what shall constitute the proper and necessary prerequisites to the issuance of a permit therefor.

The voluminous briefs filed by respondents are replete with authorities which interpret similar statutes creating commissions, and define the legislative limitations prescribed by our constitution with respect to the delegation of powers and duties to offices of such state departments. A great many decisions are quoted which deal with harbor commissions, highway commissions, municipal charities commissions, industrial accident commissions, the state medical board, and the department of agriculture, but in none of these cases, nor in any others which we have been able to find, has it been held

that the examination of facts and circumstances and determination of reasonable and necessary conditions to the issuance of permits, and their reasonable requirements, for the assurance of public safety, are legislative matters which cannot be delegated to the officers of a duly constituted state executive department. The cases relied upon by respondents hold that such commissions or departments have no power to legislate, but they do not attempt to intimate that they are mere rubber stamps. It has been held that they may not prescribe the nature and extent of proof necessary to make out a case, determine what shall be a misdemeanor and impose a penalty therefor, create drainage districts, nor in any manner enlarge or abridge a statute. Yet, in all cases where the question has arisen, it has been held that the commissioners of various departments may be invested with and exercise the power to make reasonable rules and regulations, and to determine any fact or state of facts upon which the law makes, or intends to make, its own action depend. (*Board of Harbor Commissioners* v. *Excelsior Redwood Co.*, 88 Cal. 491 [22 Am. St. Rep. 321, 26 Pac. 375]; *In re McLain*, 190 Cal. 376 [212 Pac. 620]; *In re Dart*, 172 Cal. 47 [Ann. Cas. 1917D, 1127, L. R. A. 1916D, 905, 155 Pac. 63]; *Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39].)

The Corporate Securities Act, by section 4 thereof, provides as follows:

"The commissioner may impose such conditions as he may deem necessary to the issue of such securities, and shall have the power to establish such rules and regulations as may be reasonable or necessary to insure the disposition of the proceeds of such securities in the manner and for the purposes provided in such permit, and may, from time to time, for cause, amend, alter or revoke any permit issued by him, or temporarily suspend the rights of the applicant under such permit."

This general power is conferred by all statutes creating state boards and commissions, in the same or similar language, and in no instance of which we are aware has it been held invalid because conferring legislative or judicial authority. Section 2520 et seq. of the Political Code, prescribing the powers and duties of harbor commissioners; chapter

176, Statutes of 1913, as amended, applicable to the Industrial Accident Commission; chapter 212, Statutes of 1907, as amended, known as the State Medical Act; chapter 325, Statutes of 1919, defining the powers and duties of the director of the department of agriculture, as derived from the former horticultural department (Pol. Code, sec. 2319b et seq.) ; Statutes of 1907, page 124, designated the Poison Act, and chapter 212 of the Statutes of 1907, as amended, providing for the appointment of a board of architecture, and prescribing its powers and duties, all vest such authority in officers of the departments so created. In *Ex parte McManus,* 151 Cal. 331 [90 Pac. 702], our supreme court in passing upon the question now under discussion in the instant case, sanctioned the delegation of such powers to state boards and commissions generally, in the following language:

"It is insisted, in this connection, that it was the duty of the legislature to have itself fixed in the act some standard or rules for determining the qualifications of applicants; that this was a legislative duty to be discharged by the legislature itself, and a function which it could not delegate to the board of architecture, nor invest it with arbitrary power to provide a standard or rules upon the subject. It is undoubtedly a well-recognized maxim of constitutional law that authority conferred on the legislature to make laws cannot be delegated by it to any other department or body; but here there is no delegation by the legislature to the state board of architecture of the power to declare what the law shall be. That is declared by the act. It is an equally well-recognized principle that the legislature, notwithstanding it may do things itself, may nevertheless authorize them to be done by ministerial officers or boards when it believes that they can do them more conveniently and effectually than it can itself. Especially may this be done when it is deemed proper by the legislature to regulate in the interests of the public, through public commissions or boards constituted for that purpose, the pursuit of particular professions or occupations, as, for example, that of physicians, dentists, druggists, engineers, architects and others, which involve the exercise of skill and the possession of special knowledge and experience. Such commissions or boards are composed, as under this act the board of archi-

tects necessarily must be, of persons technically skilled and trained in their profession or occupation, and who are usually better able to determine whether an applicant for a license or certificate to practice a given profession or occupation is competent to do so, under reasonable rules and standards adopted by them, than under those which might be prescribed by the legislature; and if in its wisdom the legislature authorizes such a technically trained commission or board to prescribe reasonable rules, or fix a fair standard for determining the proficiency of applicants for a license or certificate, it cannot be said that a delegation, within the constitutional inhibition, of authority to make laws is conferred, or any other authority given, than the power necessary to be exercised by them to the end that the law as completely enacted by the legislature may properly be carried into effect. . . . There is always implied a grant of authority, such as here conferred, that it shall be exercised reasonably and fairly so as to effectuate the end contemplated. It may not be presumed that the authority conferred will be abused by the formulation of unreasonable or unjust rules, and from such presumption declare the act to be unconstitutional. On the contrary, the presumption is that the board will not act unreasonably or unfairly.''

In *Agnew* v. *Daugherty*, 189 Cal. 446 [209 Pac. 34], section 4 of the Corporate Securities Act was directly attacked, and the supreme court there said:

''The passage in the above quotation from the statute which allows the commissioner to issue a permit authorizing the applicant to sell his securities 'upon such terms and conditions as the commissioner may in said permit provide' must be read in connection with the context, which provides that the commissioner must inquire into the method of doing business and shall ascertain if the same is fair, just and equitable and that the methods used in disposing of them would not work a fraud upon the purchasers thereof. The terms and conditions to be prescribed in the permit must not be such as would make a greater burden than is consistent with safety and security. If the commissioner should refuse to issue a permit except upon conditions which would be unjust, unfair or inequitable to the applicant, doubtless he would have the right to have such permit revised and

reformed so as to make it equitable and fair, but we cannot assume that he will impose such conditions in advance of his action.''

We think it unnecessary to look outside our own state for authority upholding the right of the legislature to empower and direct a commission or board created by it to make reasonable rules and regulations, to investigate into affairs of the business, profession or occupation over which it is given jurisdiction, and exercise sound discretion as occasion may arise in granting or denying rights which are conditionally conferred. Respondents do not complain that the conditions imposed by the permit issued to them were unreasonable, oppressive or arbitrary. Since, therefore, these precautionary measures in the interests of public safety may, as we have observed, be delegated to and performed by a board, commission or officer theretofore duly constituted by the legislature, respondents manifestly are subject to the regulations and conditions prescribed by the commissioner of corporations in this instance, and are not legally justified in complaining of the source from which they emanated.

That the commissioner exercises certain functions of a *quasi*-judicial character is true. ■ That the legislature has ''power to delegate to proper authority the making of suitable rules and regulations for the conduct and transaction of any branch of the business of the state,'' and to ''declare a violation of those rules a penal offense,'' there can be no doubt. (*In re Potter*, 164 Cal. 735 [130 Pac. 721].) Such delegation does not, however, as already pointed out, authorize a commissioner to declare that any particular conduct constitutes a public offense, or to impose a penalty for a violation of a rule, regulation or law. It does no more than vest in him the power to exercise such necessary judgment and discretion as shall be incidental to the enforcement of laws which prescribe his other duties, and without which he would be helpless. ■ *Quasi*-judicial power lies in the judgment and discretion of an officer other than a judicial officer. (*State ex rel. Board of Liquidation* v. *Briede*, 117 La. 183 [41 South. 487].) It is a duty conferred by words or by implication upon an officer to look into facts and to act upon them in the exercise of discre-

tion. (*Bair* v. *Struck*, 29 Mont. 45 [63 L. R. A. 481, 74 Pac. 69].)

The order appealed from is reversed.

Works, P. J., and Thompson, J., concurred.

Petitions by respondents to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on August 27, 1928, and the following opinion was then rendered thereon:

THE COURT.—The several petitions for a hearing in this court after decision by the district court of appeal in and for the second district, division two, are denied.

■ In denying these petitions, however, we desire to state that, in our opinion, the indictment herein was defective through its failure to expressly allege the relationship which these defendants bore to the corporation the stock of which was alleged to have been issued and sold and the proceeds thereof misapplied, in violation of the provisions of the Corporate Securities Act, and that the demurrer to the indictment should have been sustained upon that ground. Upon the trial of the cause, however, the relationship between these defendants and corporation was fully established, and this being so, we are of the opinion that section 4½ of article VI of the state constitution, which has relation to errors in matters of pleading and procedure, should be given application to this cause, since after an examination of the entire cause this court is of the opinion that the error complained of has not resulted in a miscarriage of justice.

All the Justices present concurred.