[Civ. No. 12265. First Dist., Div. One. May 3, 1943.]

A. C. GEISENHOFF, Respondent, v. CHARLES S. MABREY et al., Appellants.

Edward M. Fellows and Elliott, Atkinson & Sitton for Appellants.

Maurice J. Rankin and C. E. Luckhardt for Respondent.

KNIGHT, J.—In this action the court originally made

findings and entered judgment for plaintiff for $5,000. In denying defendants' motion for a new trial the court required plaintiff to remit $2,000. Defendants appeal from the judgment thus reduced.

The judgment is for the reasonable value of services of a promotional nature rendered by plaintiff in connection with a project for construction and operation of an ice skating rink in San Jose. Judgment is against Ice Bowl, Inc., a corporation, and against defendants Mabrey, Hollenbeck, Streeter and Schwab. The individual defendants are directors and officers of the corporation. No stock in the corporation was ever issued. The defendants claim to be beneficial owners of the corporation's property. The court found that they operated the skating rink "as their individual enterprise and as a joint venture among themselves," but "under the name of said corporation." A principal question is as to the liability of the individual defendants.

Plaintiff was a real estate and insurance broker in San Jose with reserve status in the Navy, to which he reported for active duty as an officer on August 2, 1940. He was introduced to defendant Mabrey in January, 1940, by one Jones, also a real estate broker in San Jose. Mabrey and two others, Johnson and Hann, were interested in establishing a skating rink in San Jose. All were from Sacramento, where Mabrey and Hann were connected with an ice rink business. Jones knew that plaintiff was agent for a site in San Jose suitable for a rink.

On March 6, 1940, articles of incorporation for Ice Bowl, Inc., were filed, describing Mabrey, Johnson and Hann as incorporators. On March 12, 1940, the corporation took a three year lease on the proposed site, including an option to buy. On March 30, 1940, the Corporation Commissioner issued a permit for the sale of stock, by which the corporation was authorized to sell 80,000 shares of a par value of $1.00 each for cash at par, and as shares were sold and issued for cash to issue a like number of shares to "any or all of the following named persons: Roy Hann, Chas. S. Mabrey and Geo. W. Johnson," as "partial consideration for promotion services." The permit provided for the deposit in escrow of payments received from subscribers pending further order of the commissioner, and for deposit of the promotional shares in escrow. It further provided that there should be no

sale or transfer of the promotional shares, or any interest therein, without the written consent of the commissioner.

A few subscriptions for stock were taken and payments made therefor, but no stock certificates were actually issued to any purchaser, nor were certificates issued for promotional stock. The permit by its terms expired on September 29, 1940. A renewal was refused in November, 1940, because it appeared that the payments made by subscribers instead of being held in escrow had been used to pay expenses. Stock subscription payments were subsequently refunded.

In April, 1940, a small structure to be used as a construction office was placed on the property. It does not appear just when work on the rink started, but it was under way in the summer of 1940. Mabrey, who was a building contractor, supervised construction. The plan apparently was to finance the building of the rink with proceeds from the sale of stock to a large number of persons. But this plan was not carried out. By June, 1940, Hann and Johnson, who were employed in a state office in Sacramento, ceased to be connected with the enterprise, for the reason that they were unable to secure capital or give time. Defendants Hollenbeck and Schwab of Sacramento, became directors in place of Hann and Johnson. Mabrey continued to be the active head of the enterprise as before. Hollenbeck made advances totalling $18,420, for which he received notes of the corporation, the first dated June 28, 1940, for a loan of $1,000. He also guaranteed notes of the corporation for bank loans in the amount of $36,750, which he was called upon to pay. He testified that he was to receive 25 per cent of the promotion stock for this assistance, in addition to being repaid his advances with interest. Schwab, a Sacramento attorney, also was to receive 25 per cent of the promotion stock. What he contributed in the way of money or services does not appear. There are references to his having interested Hollenbeck.

In September, 1940, defendant Streeter became a party to the venture. He advanced in all $27,000, under an agreement that he was to be repaid, with interest, and also to receive 25 per cent of the promotion stock. Neither Hollenbeck nor Streeter has been repaid.

The rink opened on December 23, 1940, and at the time of trial, in December, 1941, was still operating. Witnesses for defendants testified that it operated at a loss, but its financial condition was not shown in detail. In June, 1941,

there was an exercise of the option to purchase the property on which the rink was located. The lease of March 12, 1940, which included the option, had been taken in the name of the corporation, Ice Bowl, Inc. The owner of the property had placed a deed in escrow with a title insurance company, naming that company as grantee. The company, in turn, executed a deed to George A. Martinelli, one of the attorneys for the project, dated June 10, 1941. Martinelli executed a deed to the corporation, Ice Bowl, Inc., bearing the same date, which was not, however, recorded until December 27, 1941, after the present action had gone to trial.

The funds with which to pay the purchase price of $11,000 were obtained by a loan from one Addison, in the sum of $30,000. The balance went to discharge debts of the enterprise. Martinelli executed a note and deed of trust for the loan. Mabrey, Hollenbeck, Schwab and Streeter and their wives executed a similar note and deed of trust for the same debt. No note or deed of trust was executed in the name of the corporation. Upon the sale plaintiff received from the seller the usual five per cent real estate broker's commission, amounting to $550.

Against this background of organization the services of plaintiff may be detailed. As noted above, plaintiff met Mabrey, Johnson and Hann in January, 1940. Sometime thereafter Mabrey importuned him to join in promoting the rink. Mabrey, Johnson and Hann were not acquainted in San Jose, and Mabrey represented, according to plaintiff, that someone was needed who was known locally and acquainted with local firms and who could interest local capital. The witness Jones also testified that Mabrey told him that the desire was to have someone with an excellent reputation in the community connected with the enterprise. Plaintiff had been a real estate and insurance broker in San Jose for fifteen years.

The rink site was zoned for residential purposes. Plaintiff was successful in obtaining a rezoning, but the trial court expressed the opinion that this service was as a real estate broker, and was compensated for by the commission he received on the exercise of the option. Plaintiff also testified that he arranged for credit for the project with the Chiem Lumber Company, San Jose Supply House, General Printing Co., and a contractor who did certain work. During the erection of the rink plaintiff's real estate office was used as

a headquarters. Although Mabrey was in charge of construction operations, plaintiff testified that as a rule Mabrey was in town only once or twice a week. In his absence plaintiff handled the numerous details involved in supervision of the construction, such as the payment of workmen and purchase of materials. He arranged with a contractor friend to release a foreman for the rink job. Since there was a shortage of funds at times, it was often necessary for plaintiff to deal with those who pressed for payment. He also arranged for publicity in the San Jose Mercury Herald and in the San Jose News. At the time there was a competing ice rink project under promotion. According to plaintiff, he spent ninety per cent of his time for about six months in promoting the rink.

Plaintiff did not hold a stockbroker's license and it was not contemplated that he should sell stock, but only that he should interest prospective purchasers. By reason of his efforts a Mrs. Krull subscribed for $2315 worth of stock and she and certain relatives were prepared to make a further investment of $12,000. One Rampe also subscribed. It is to be inferred that efforts to interest a large number of persons were abandoned when it became apparent that it would be more feasible to finance the rink through a few individuals who could supply substantial sums. It does not appear that plaintiff would not have interested other persons had the project gone ahead as first planned. Defendants minimized plaintiff's services, but the trial court accepted his version.

Plaintiff testified that Mabrey repeatedly represented that for his services, performed at Mabrey's request, plaintiff should have an interest in the business; that he pressed Mabrey to enter into a definite agreement, but that Mabrey, while urging him to continue his services, put him off with vague promises as to what his compensation should be. In substantiation of plaintiff's testimony that he did not have, but was seeking, a definite commitment, there is in evidence a letter which he wrote to Johnson on April 7, 1940, stating that he expected to continue to do everything possible for the project, but felt it advisable that a definite agreement be worked out which would be mutually satisfactory. On April 9, plaintiff wrote to Hann and Johnson jointly, expressing the view that if he was to continue with the organization he should be compensated with an interest in the cor-

poration. The figure he suggested was stock in the amount of $6,000. The letter closed with the wish that a definite commitment be made so he would know where he stood.

On May 25, 1940, Mabrey signed a writing composed by him and plaintiff jointly, on stationery of plaintiff, which is as follows:

"In consideration for the services rendered to date by A. C. Geisenhoff in the promotion of the ice skating rink known as Ice Bowl, Inc., we, the undersigned directors, agree to allot to said A. C. Geisenhoff ten per cent of the promotion stock as allowed by the corporation commissioner. It is further understood and agreed that the promotion stock is to be distributed on a basis of the effort and contribution to the success of said Ice Bowl, Inc., as rendered by the various individuals engaged in the promotion of said project.

[Signed]                            CHAS. S. MABREY,
                                    Director Vice President."

Plaintiff relies on no other written evidence of an agreement for his compensation. By this writing Mabrey does not purport to act for anyone but himself. Although the writing in terms indicates that it was to be signed by more than one, Mabrey was the only one to sign it. Plaintiff testified that it was at Mabrey's request that he did not seek other signatures. By the date of the writing, according to plaintiff, Johnson and Hann were out and Hollenbeck and Schwab were connected with the enterprise. Plaintiff also testified that the understanding with Mabrey was that whatever form the organization assumed he should have a ten per cent interest in the business.

Plaintiff also testified that he was to receive the insurance on the rink property. Policies were actually issued but were cancelled and other insurance substituted after plaintiff had gone in the Navy.

The court found that "in February, 1940" an agreement was made that plaintiff should receive for his services "an undivided 1/10 interest in said project and business and the property and profits thereof." In our analysis the plaintiff's own evidence shows that he did not have an agreement as of February, 1940, by which a definite percentage interest in the business was fixed as the measure of his compensation; that the first definite commitment was that of May 25, 1940,

with defendant Mabrey, by which he did not purport to bind anyone but himself.

We are of the view that the evidence is insufficient as a matter of law to show that Johnson and Hann, or subsequently the defendants (with the possible exception of Hollenbeck) authorized or ratified an agreement that plaintiff have a ten per cent interest in the business. Mabrey's implied authority as active head of the enterprise would not be so broad as to enable him to confer on others an interest in the business which he shared with his associates. But the evidence shows beyond dispute that the promotional services were rendered at the express instance and request of Mabrey, and under such circumstances that there would be implied a promise and intent on the part of Johnson and Hann, as well as Mabrey, that plaintiff should be· paid the reasonable value thereof in the event of the failure to reach an agreement for a different measure of compensation. As to Hollenbeck and Schwab also, accepting the view of the evidence most favorable to plaintiff since the judgment is in his favor, it must be held that they assented and ratified plaintiff's continued employment. That is, while the evidence is insufficient to show that defendants authorized or ratified an agreement that plaintiff have an interest in the business, it does establish that they authorized or ratified the employment of plaintiff under such circumstances that a promise to pay the reasonable value of his services will be implied.

The judgment is for the reasonable value of plaintiff's services. The first count of the complaint, a common count for the reasonable value of the services, is the basis for this recovery.

Before considering to what extent the individual defendants as well as the corporation Ice Bowl, Inc., are liable to plaintiff, the contention that there is no evidence of the value of his services may be disposed of. Defendants object that no witness testified as to that value. We are of the view that this is a situation where it was competent for the trial judge to determine the worth of the services from the testimony as to their nature and extent. (*Seib* v. *Mitchell,* 10 Cal. App.2d 91 [52 P.2d 281]; *Nylund* v. *Madsen,* 94 Cal.App. 441 [271 P. 374]; *Lundberg* v. *Katz,* 44 Cal.App.2d 38 [111 P.2d 917].) There are types of technical service with which a judge or jury may be too unfamiliar to make a determina-

tion without expert testimony, but the services here are not of that kind. In any event it can be said as a matter of law that the services were of the reasonable value of at least $3,000, to which the court reduced the judgment.

If, as held by the trial court, the defendants were conducting the business as "their individual enterprise and as a joint venture," but "under the name of said corporation," then the individual liability of Hollenbeck, Schwab and Streeter for the reasonable value of plaintiff's services performed before they became associated with the enterprise is governed by section 2411, Civil Code, as follows: "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property." (See, also, sec. 2435, Civ. Code.) The joint venture, if one exists, is, on the facts of this case, a partnership as regards section 2411.

Whatever the effect of the statements made by Hollenbeck to plaintiff and the witness Fuller as to Mabrey's authority to act for him, they cannot be construed as an assent that his liability for plaintiff's services prior to Hollenbeck's connection should be satisfied out of his individual property. The liability of the individual defendants for debts arising *after* their association with the business is governed by the usual rule that partners are liable for partnership debts without restriction of satisfaction to partnership property, subject to the rules for marshaling assets.

We are of the view that the trial court's finding that the individual defendants conducted the rink business "as their individual enterprise and as a joint venture among themselves" under the name of the corporation is supported by the record. We have adverted to the fact that no stock in the corporation was ever issued. The corporation came into existence on March 6, 1940, with the filing of its articles of incorporation. We do not hold that the issuance of stock is a requisite to corporate existence, or in all cases to freedom from individual liability. (See note, 50 A.L.R. 1030.) But in the case herein the evidence shows that although a permit for the sale and issuance of stock was granted on March 30, 1940, no stock had been issued at the time of trial in December, 1941. It appears that a few subscriptions for stock

were taken and the purchase price received. Under the permit the proceeds were required to be held in escrow pending further order of the Corporation Commissioner, although the stock issued for cash was not required to be held in escrow. The evidence shows that no shares were issued and that the proceeds from the stock subscriptions were used to pay expenses. The purchase price was subsequently refunded to subscribers.

The permit provided for the issue of promoters' shares to Mabrey, Johnson and Hann equal to the number of shares sold for cash, and that such shares should be held in escrow pending further order of the commissioner. It further provided that there should be no sale or transfer of promoters' "shares, or any interest therein," without the written consent of the commissioner. The permit expired September 29, 1940. An application for renewal was denied on November 7, 1940, and no permit has been issued since. There was testimony that a permit could not be obtained while this action and two others for services were pending.

The Corporate Securities Act is designed to secure a sound corporate structure not only for the benefit of those to whom stock may be sold, but also for creditors. (*People* v. *Kuder*, 98 Cal.App. 206, 216 [276 P. 578].) The provisions of the permit as to holding proceeds from the sale of stock in escrow, limiting the issue of promotion shares to the number of shares sold for cash, and prohibiting the transfer of promotion shares without the consent of the commissioner were designed to accomplish that purpose. The objects of the act would be circumvented if those who own the beneficial interests in a project could secure freedom from individual liability for themselves, and for those to whom they transfer interests in the venture, while at the same time avoiding compliance with the permit restrictions through the device of never issuing stock. While the corporation herein continued to exist as an entity and received a deed to the rink property and signed notes for loans, those managing the business cannot claim immunity from individual liability when the corporate structure over a period of almost twenty-one months had not been completed by the issue of stock. The transfers of 25 per cent interests in the project to Hollenbeck, Schwab and Streeter will not be viewed as stock in the corporation, using that term as applicable to an interest in the business, rather than as applying merely to the certificates, in view of the fact that under the permit there was no right to transfer

stock to them. Defendants have at all times maintained they each have 25 per cent interests in the business, which interests they could not have lawfully if they represent stock ownership in a corporation. In the circumstances agreements as to their interests will be regarded as transfers of interests in a business in the profits and losses of which they were to share as partners, and in which their liability is as partners.

The judgment is also against Ice Bowl, Inc., a corporation, which holds title to the property of the enterprise, including the rink. That property, obviously, is not placed beyond reach of creditors of the partnership because it is in the name of the corporation.

As to the corporation and Mabrey the judgment is affirmed. Mabrey has been associated with the enterprise at all times. As to Streeter, the judgment is modified by restricting satisfaction to partnership property, including property held in the name of the corporation, and as thus modified is affirmed. Plaintiff had finished his services before Streeter joined the venture. As to Hollenbeck and Schwab, the judgment is affirmed insofar as it determines the total amount of their liability. But as to them the trial court is directed to ascertain what portion of the award of $3,000 is for services performed prior to the time of their connection with the business, and thereupon to modify the judgment by providing as to each that his liability for such part of the $3,000 award shall be satisfied only out of partnership property, including property in the name of the corporation. The respondent shall recover costs on appeal against all defendants.

Peters, P. J., and Ward, J., concurred.