[Crim. No. 1001.   Second Appellate District, Division One.—November 1, 1923.]

THE PEOPLE, Respondent, v. J. MILLER, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—POSSESSION OF PROPERTY—ABSENCE OF INTENTION TO PAY THEREFOR—EVIDENCE.—In a prosecution for grand larceny, if the defendant, at the time he obtained possession of the property, had no intention of paying therefor,

---

1.   Obtaining property by means of promise to pay, or give security, for same, without intent to do so as larceny, note, **L. R. A.** 1916E, 769.

Distinction between larceny and obtaining property by false pretenses, note, 2 **Ann. Cas.** 1010.

he is guilty, and the existence or nonexistence of this intention is a fact for the jury to decide.

[2] ID.—PURCHASE OF HAY—ABSENCE OF INTENT TO PAY—EVIDENCE—VERDICT.—In this prosecution for grand larceny, the jury, by its verdict of "guilty," found that the defendant, at the time he made the purchases of the hay from the prosecuting witnesses, had no intention of paying therefor; and the evidence warranted the jury in arriving at such conclusion.

[3] ID.—TESTIFYING THROUGH INTERPRETER — DENIAL OF REQUEST TO ANSWER IN ENGLISH.—The trial court having concluded that one of the witnesses for the prosecution was unable ·to understand, and to express himself in, the English language, and, therefore, that an interpreter was necessary, it did not commit error in thereafter, while such witness was giving his testimony through an interpreter, denying the request of defendant's attorney that such witness be directed to answer certain questions in English.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jesse R. Shafer for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was found guilty of grand larceny upon two counts: One charging him with the larceny of 63 tons of hay of the value of $1,008, the personal property of Sebastian de Costanze, and the other with the larceny of 128 tons of hay of the value of $2,048, the personal property of Tomatis and Pizzo.

The testimony under the first count was that on August 15, 1922, the defendant verbally bought 63 tons of hay from Costanze at $16 per ton, and agreed to pay therefor in cash as soon as the hay was weighed. Immediately thereafter defendant sent trucks to the premises of Costanze and hauled all of the said hay from said premises prior to August 30, 1922. On August 30th Costanze called upon defendant at his office in the city of Los Angeles and requested payment for the hay and was informed by defendant that he could not pay him that day but would pay him

on the 6th or 7th of September. About September 8th Costanze again called upon defendant at his office. The office was closed and Constanze then went to the barn of defendant on Aliso Street and later, on the same day, to defendant's mill at Perry Station near Redondo Beach. Both the barn and the mill were closed and Costanze found neither the defendant nor any other person at either of these places. A few days later he called at defendant's house and was informed by defendant's wife that the defendant was not at home and would not be back until the following Sunday and for him to call again Monday. On Monday Costanze again called to see defendant at his house. He was told by defendant's wife that the defendant had not yet returned, but would return that night. Costanze did not meet the defendant again and the latter has never paid him anything for said hay.

The testimony under the second count was that on August 19, 1922, by written agreement, defendant purchased of Tomatis and Pizzo 100 tons of hay at $16 per ton. The agreement is silent as to the time of payment. Tomatis and Pizzo both testified that it was to be paid for in cash as soon as the hay was weighed. Defendant removed the hay from the premises of Tomatis and Pizzo, amounting to 128 tons, about the 21st and 22d of August. Two days later Tomatis and Pizzo called upon the defendant at his place of business on Aliso Street and asked payment for the hay. Defendant replied that he had not yet received the tags showing the weight of the hay and therefore could not pay them, and asked them to return two or three days later. They returned at the appointed time and defendant informed them that they would have to wait until Saturday as the person to whom he had sold the hay had not yet paid him for the hay. They returned on the following Friday and again found the defendant at his place of business. The latter told them that the bookkeeper was sick and he could not make out a check and for them to wait two or three days longer. The next Saturday they returned and found defendant and his bookkeeper in an automobile near defendant's place of business. Defendant told them that he could not pay them and for them to come back in five or six days. They might have seen him on one occasion

thereafter. The defendant has never paid them any part of the purchase price of the hay.

A witness by the name of W. M. Hilliker also testified that he lived in the San Fernando Valley, and on August 5, 1922, he sold to the defendant a lot of hay, amounting to about a hundred tons, for which the defendant agreed to pay him in cash as soon as the same was weighed, $17.50 per ton for the alfalfa hay, $18 per ton for the barley hay, and $19 per ton for oat hay. Defendant also agreed to send him a check for $150 by the first driver who came to haul the hay. The defendant immediately sent trucks to haul the hay from the Hilliker place. He failed to send his check for $150, but on August 11th, and after a large portion of the hay had been hauled from the premises by the defendant, Hilliker called upon defendant at his office in the city of Los Angeles and demanded payment on account of the hay. The defendant thereupon paid him $200. He never paid Hilliker anything more for the hay sold.

The defendant took the stand and denied that he agreed to pay cash for the hay, but, on the other hand, stated that he was to have from ten to thirty days in which to pay for the same, and in other respects he contradicted the testimony given in behalf of the prosecution. He testified that he sold 35 tons of the hay to a person who paid him a small cash payment and gave his note for $500 in settlement of the balance. He made no further explanation as to why he had not paid for the hay purchased from the several parties. The jury, however, having found the defendant guilty, it is presumed that they accepted the statements of the witnesses on behalf of the prosecution and found against the defendant upon all issues where the evidence was contradictory.

Appellant now contends that the evidence is not sufficient to justify a verdict against the defendant upon the charge of grand larceny.

A case very similar to the case at bar was before the court in *People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865], in which case the court said as follows: ''Where a sale is a cash sale, delivery of the goods and payment of the purchase money are concurrent acts, and the vendor, though he has made delivery, supposing that he would immediately receive the purchase price, may reclaim the property from the purchaser if the purchase money be not paid according

to the terms of the sale, provided he has not waived the cash payment or been guilty of laches or such conduct as would estop him. If the condition of cash payment is not waived, the title does not pass until the price is paid. . . . It frequently happens that the seller will deliver the goods notwithstanding the failure to fulfill the condition of payment. In such cases, the question whether the delivery is to be considered a waiver of the condition that payment shall be made before the title passes may depend upon the attendant circumstances; for, whether the condition has been waived or not is a question of intention. An absolute delivery of property to the buyer without a demand of the purchase price is presumptive evidence of a waiver of the condition of present payment and of a willingness to give credit to the buyer. This presumption, however, may be rebutted by the acts and declarations of the parties, or by the circumstances of the case. Whether the delivery without payment is absolute, so as to pass the title, or conditional, so that the title does not pass, depending as it does upon the intention of the parties, the intent that the delivery before payment shall be conditional and not absolute may be inferred from the acts of the parties and the circumstances of the case, and is a question of fact for the jury.''

In an early case—*People* v. *Smith*, 23 Cal. 280—the facts were as follows: ''The defendant was indicted and convicted of the crime of grand larceny in stealing a horse. The evidence showed that the defendant hired the horse of the keepers of a livery stable and in that way obtained possession.'' A judgment of conviction in this case was affirmed by the supreme court. **[1]** The rule appears to be that if the defendant, at the time he obtained possession of the property, had no intention of paying therefor, he is guilty of larceny, and that the existence or nonexistence of this intention is a fact for the jury to decide.

**[2]** In the case at bar the jury, by its verdict of ''guilty,'' has found that the defendant, at the time he made the purchases set forth in the information, had no intention of paying for the hay purchased, and we are of the opinion that the evidence warranted the jury in arriving at this conclusion.

Two other points are raised by the appellant as grounds for reversing the judgment. Appellant contends that the court erred in failing to excuse the juror, Dewey H. Burden,

challenged by the defendant on the ground of actual bias. We have examined the evidence of this juror taken upon his *voir dire* and we find nothing therein that would have justified the court in sustaining defendant's challenge.

[3] Neither do we find any error in the ruling of the court denying appellant's request that the witness Pizzo answer certain questions propounded to him directly in English and not through an interpreter. This witness had attempted to give his testimony in English. During his examination the court came to the conclusion that an interpreter was necessary on account of his inability to understand, and express himself in, the English language. It was while he was giving his testimony through an interpreter that the defendant's attorney requested that he be directed to answer certain questions in English. The questions related to a conversation that the witness stated he had overheard between the defendant and Tomatis which was in English. The court refused this request and also the request of appellant to examine the witness regarding his knowledge of the English language and his ability to speak the same. In denying defendant's request the court stated that he did so under authority of *People* v. *Avila,* 50 Cal. App. 228 [194 Pac. 768], and that it satisfactorily appeared to the court that the witness, under the rule laid down in that case, should be permitted to give his testimony through an interpreter. The action of the court in this respect will not be disturbed by this court. "In each case the question is one for judicial determination of the trial court. Its ruling thereon will not be disturbed unless the record clearly shows an abuse of discretion." (*People* v. *Avila,* supra.) There is nothing in the record before us that would indicate in the slightest degree that there was any abuse of discretion on the part of the court in denying appellant's request.

The judgment and order denying a motion for a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1923.