[Crim. No. 1562. First Appellate District, Division One.—July 12, 1930.]

THE PEOPLE, Respondent, v. I. W. ROBINSON, Appellant.

Milton T. U'Ren for Appellant.

U. S. Webb, Attorney-General, and W. R. Augustine, Deputy Attorney-General, for Respondent.

THE COURT.—Appellant Robinson, A. N. Jackson and W. S. Himmelright were jointly charged by an indictment with ten separate offenses of grand theft. Jackson and Himmelright entered pleas of guilty to one of the counts of the indictment and Robinson pleaded not guilty to each count. A jury found the latter guilty as charged upon nine of the counts and upon the other returned a verdict of petty theft. The appeal is from the judgments entered thereon, and the orders denying motions for a new trial.

The counts in the indictment were identical in form except as to the names of the persons whose property was alleged to have been taken and the description of the same, the allegations of the first count being as follows: "The grand jury of the county of Alameda hereby accuses I. W. Robinson, A. N. Jackson, and W. S. Himmelright of a

felony, to wit, grand theft, a violation of section 484 of the Penal Code of California, in that on or about the 11th day of June, 1928, at the said county of Alameda, State of California, they, the said I. W. Robinson, A. N. Jackson, and W. S. Himmelright, unlawfully took the property of one Gabriella Morello consisting of 30 shares of Bank of Italy stock, certificate No. B–34,302, of the reasonable value of Sixty-three Hundred Dollars ($6300.00) more or less lawful money of the United States.''

A number of grounds for reversal are urged, the first being that sections 484 and 490a, 951 and 952 of the Penal Code, under which appellant was charged and convicted, contravenes certain provisions of section 13 of article I of the Constitution in that the pleading required by the statute is insufficient to inform a defendant of the nature of the crime charged, so that he may be prepared to defend, or, upon an acquittal or conviction, to protect him against being again placed in jeopardy for the same offense.

Section 950 of the Penal Code requires that the indictment contain a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended, and section 952 of the same code provides that in charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another. ▮ Due process of law requires only that the accused be given sufficient notice of the nature of the charge against him (*Rogers* v. *Peck,* 199 U. S. 425 [50 L. Ed. 256, 26 Sup. Ct. Rep. 87]; *Garland* v. *Washington,* 232 U. S. 642 [58 L. Ed. 772, 34 Sup. Ct. Rep. 456] to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense (*United States* v. *Simmons,* 96 U. S. 360 [24 L. Ed. 819]). The state, however, has the right to establish forms of pleading to be observed in its own courts, subject only to the provisions of the federal Constitution involving the protection of life, liberty and property in all the states (*Ex parte Reggel,* 114 U. S. 642, 651 [29 L. Ed. 250, 5 Sup. Ct. Rep. 1148, see, also, Rose's U. S. Notes]), and in *People* v. *Nolan,* 144 Cal. 75 [77 Pac. 774], where the defendant, an accomplice, was charged in the information as a principal in conformity with section 971 of the Penal Code, it was held that the

pleading was .sufficient notice of the nature of the accusation to satisfy the requirements of the federal Constitution. The same objection to an information which followed the provisions of section 951 of the same code was made and overruled in *People* v. *Burdg*, 95 Cal. App. 259 [272 Pac. 816], and it was held in the following cases that an indictment charging grand theft in the statutory form gave the defendant all the information necessary as to the nature of the accusation and that proof of any one of the species of theft named in section 484 of the Penal Code is sufficient to sustain the charge (*People* v. *Plum*, 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322] ; *People* v. *Campbell*, 89 Cal. App. 646 [265 Pac. 364] ; *People* v. *Lalor*, 95 Cal. App. 242 [272 Pac. 794] ; *People* v. *Wickersham*, 98 Cal. App. 502 [277 Pac. 121]). ■ The amendment to section 484 (Stats. 1927, p. 1046) in connection with other cognate legislation, such as amendments to sections 951 (Stats. 1927, p. 1043) and 952 (Stats. 1927, p. 1043; Stats. 1929, p. 303) of the Penal Code, was designed to simplify procedure (*People* v. *Myers*, 206 Cal. 480 [275 Pac. 219]). And the effect of section 484 is to merge the former crimes of larceny, embezzlement, and obtaining property by false pretenses into the one crime of theft (*People* v. *Plum, supra; People* v. *Palmer*, 92 Cal. App. 323 [268 Pac. 417]).

■ There is nothing in this legislation which deprives the accused of his rights under the section of the article of the Constitution upon which appellant relies, namely, the right to appear and defend, or which supports the contention that a judgment based upon pleadings in the statutory form would be an insufficient protection against another prosecution. ■ Moreover, the identity of the offense involved in the plea of former conviction or acquittal rests ultimately in parol proof and may be thus established even though the pleadings be alike. (*People* v. *Faust*, 113 Cal. 172 [45 Pac. 261] ; *People* v. *Foster*, 198 Cal. 112 [243 Pac. 667].)

The evidence shows that some time previous to March, 1928, appellant, under the name of Colonial Loan and Discount Company, entered upon the business of loaning money on stocks and bonds, the amount loaned being usually about sixty per cent of the security. The facts of the transaction alleged in the first count of the indictment furnish an

example of his methods. On June 11, 1928, Gabriella Morello borrowed from appellant $3,780, for which she gave her note. The note was made payable to Colonial Loan and Discount Company, one year after date, with interest, which, with the brokerage charges, was deducted in advance. As security she delivered on the same date thirty shares of Bank of Italy stock, the market value of which on the day of delivery was $6,300. The net amount of the loan to Mrs. Morello, namely, $3,326, was paid to her on June 15, 1928, but in the meantime appellant had sold the stock pledged for the sum of $6,527, which was $227 more than its market value on the date it was deposited. A few days thereafter Mrs. Morello was induced to deliver to appellant as additional security another certificate of twenty-five shares in the same banking corporation. Thereafter she demanded the return of this certificate, but a redelivery was refused unless she deposited other security. In compliance with this requirement she delivered to appellant on July 2, 1928, fifty shares of stock of Bancitaly Corporation, whereupon a certificate for twenty-five shares of Bank of Italy stock was delivered to her. On July 3, 1928, appellant sold the Bancitaly Corporation stock for $6,066. With the above exception, none of the stock pledged or the proceeds therefrom were returned to Mrs. Morello. The same course was followed by appellant in his dealings with other borrowers as alleged in the indictment, and evidence of similar transactions other than those alleged was admitted for the purpose of showing design or system. The notes executed by the several borrowers each contained the following provisions respecting the security which was described therein: "I hereby assign, deliver, and pledge with the said payee as collateral security for the payment of this note the following personal property. . . . "

The notes also provided that if in the judgment of the payee the market price of the stock pledged should drop fifteen per cent the payee should have the right to demand further security and if the same was not forthcoming to sell the pledge after twenty-four hours' written notice. It was also stipulated therein that all securities deposited as collateral, might be sold, pledged, transferred or assigned by the payee at any time, the borrower ratifying anything the payee might do in that behalf. In each instance the stock

pledged was sold immediately without notice, and for more than the amount of the loan, and in several instances the borrowers, who were ignorant of the previous sale of their stock, were induced to deposit more security upon the representation that if they refused a sale would be made. According to their testimony, the borrowers were promised that the pledged stock would not be sold but returned when the loan was paid, and each of them testified that their stock was delivered in reliance upon this promise. None, however, was returned, nor was any part of the proceeds paid to the borrowers mentioned in the indictment.

Appellant contends that the facts show that title to the stock passed to him, that any promise with respect thereto was of something in the future, and that consequently there was a failure to prove the commission of any crime.

As the court said in *People* v. *Tomlinson,* 102 Cal. 19 [36 Pac. 506, 507] : ''On the facts there must often be a very narrow margin between cases of larceny, obtaining money by false pretenses, an embezzlement, because the character of the crime depends upon the secret intention of the parties, which is often difficult to ascertain; but so far as the law is concerned, the principles upon which the question of guilt or innocence is to be determined are plain. . . . Where one honestly receives the possession of goods upon a trust, and after receiving them fraudulently converts them to his own use, it is a case of embezzlement. If the possession has been obtained by fraud, trick, or device, and the owner of it intends to part with his title when he gives up possession, the offense, if any, is obtaining money by false pretenses. But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession and not with the title, the offense is larceny.'' And as held in the same case, the questions whether the defendant feloniously took the property or the owner intended to part with title are for the jury. ■ It is manifest from the documentary and oral evidence in the present case that the stock was pledged by the borrowers to appellant. In such cases the general property and title remain in the pledgor, subject only to a lien in favor of the pledgee for the amount of his debt (*Wright* v. *Ross,* 36 Cal. 414; *Brewster* v. *Hartley,* 37 Cal.

15 [99 Am. Dec. 237]). And this notwithstanding an apparent transfer of legal title to the pledgee (*Cross* v. *Eureka Lake etc. Canal Co.,* 73 Cal. 302 [2 Am. St. Rep. 808, 14 Pac. 885] ; *Sparks* v. *Caldwell,* 157 Cal. 401 [108 Pac. 276]), or that the owner under such circumstances would be estopped from asserting title against an innocent purchaser from the pledgee (*Fowles* v. *National Bank of California,* 167 Cal. 653 [140 Pac. 271]). ■ Moreover, the state not being a party to the transaction, parol evidence is admissible to show the intention of the parties notwithstanding their written agreement (*Smith* v. *Moynihan,* 44 Cal. 53; *People* v. *Eiseman,* 78 Cal. App. 223 [248 Pac. 716). ■ As stated, section 484 of the Penal Code merges the former crimes of larceny, embezzlement and obtaining property by false pretenses into the one crime of theft, proof of any one being sufficient to sustain the charge (*People* v. *Plum, supra*), ■ and the rule is well settled that where there is a transfer of possession merely or of some special property by way of pledge or bailment which has been secured by fraud with a present felonious intent to convert the property so acquired, the offense is larceny (*People* v. *Raschke,* 73 Cal. 378 [15 Pac. 13] ; *People* v. *Campbell,* 127 Cal. 278 [59 Pac. 593]). ■ As appellant contends, to constitute the crime of obtaining property by false pretenses, the misrepresentations must be of an existing or a past fact (*People* v. *Green,* 22 Cal. App. 45 [133 Pac. 334] ; *People* v. *Walker,* 76 Cal. App. 192 [244 Pac. 94] ; *People* v. *White,* 85 Cal. App. 241 [259 Pac. 76]), but such proof is not essential to a conviction of larceny by fraud or trick. It was held in the following cases to be sufficient that the owner induced by the fraudulent promises of the accused (which were in some instances to apply the property to a purpose contemplated by the owner and in others to pay its agreed price on delivery) delivered possession to the accused without the intention of parting with title, and that the latter, having obtained possession with the preconceived intention of appropriating the property without performing his promise, did subsequently convert it to his own use (*People* v. *De-Graaff,* 127 Cal. 676 [60 Pac. 429] ; *People* v. *Grider,* 13 Cal. App. 703 [110 Pac. 586] ; *People* v. *Schenone,* 19 Cal. App. 280 [125 Pac. 758] ; *People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865] ; *People* v. *Miller,* 64 Cal. App. 330 [221

Pac. 409]; *People* v. *Edwards,* 72 Cal. App. 102 [236 Pac. 944, 948]).

 It is further urged that the venue of the offenses alleged in counts 6, 7, 8 and 9 of the indictment did not lie in Alameda County. The first three counts alleged the theft of the property of Thomas Bava, consisting of shares of stock in three corporations, which, according to the testimony, was pledged by the owner as additional security to secure the loans from appellant. The original security in each instance was sold by the latter on the day following its receipt for more than the amount of the loan, and the stock which is the subject of the charges in the indictment was subsequently delivered to appellant following a letter and a telephone message which were received by Bava in Alameda County from appellant's agent. The agent stated that the market price of the stock originally pledged had declined, and that unless further security was furnished the stock would be sold by appellant. It was manifestly made for the fraudulent purpose of inducing Bava to part with additional shares, and it is a fair conclusion from the testimony that it had that effect. Appellant claims, however, that this stock having been delivered in San Francisco and converted there, if at all, the venue should have been laid in this county. This contention must, we think, be sustained, as the evidence was clearly insufficient to show the commission of the offense of larceny in Alameda County and this notwithstanding false representations were made there. As the court said in *People* v. *Edwards, supra:* "The taking, in order to support a charge of larceny, must be against the will of the owner or at least without his consent. In other words, the act of taking must be a trespass against the owner's possession. Though the taking must be against the will of the owner or a trespass to his possession, still an actual trepass or actual violence is not necessary. Fraud may take the place of force. . . . In such case the fraud vitiates the transaction, and the owner is deemed still to retain a constructive possession of the property." Or where possession is obtained by the accused upon the false and fraudulent representation that it is to be used for a special purpose, title still remains in the owner (*People* v. *Solomon,* 75 Cal. App. 9 [241 Pac. 931]).

Although evidence of fraud is admissible for the purpose of showing that the act of taking was without the consent of the owner, that is to say, was a trespass, fraud is not a necessary element of the crime of larceny, and in the transaction set forth in the three counts in question, all of the acts which would constitute that offense occurred in San Francisco.

Nor does the evidence adduced in support of these counts show the commission in Alameda County of the offense of obtaining property by false pretenses. While a false representation is a necessary element of the latter crime, and the venue of the offense may be laid either in the county where the representation was made or the property delivered (*People* v. *Bocchio,* 80 Cal. App. 138 [251 Pac. 672]) in order to prove the offense it is necessary to show that title to the property passed to the accused (*People* v. *Tomlinson, supra; People* v. *Delbos,* 146 Cal. 734 [81 Pac. 131]; *People* v. *Shwartz,* 43 Cal. App. 696 [185 Pac. 686]), which here, as shown by the evidence, was not the case.

As to the offense charged in the ninth count, there were no false representations or promises made in Alameda County, nor was the property the subject of the alleged theft delivered or converted there. It appears that Lily H. Hughes, who resided in Oakland, following an offer to make loans without interest to the authors of letters commending a radio program broadcasted by appellant and the receipt of two letters from his office in San Francisco offering her a loan for one year without interest, visited the office. There, following negotiations, she received a loan from appellant and delivered to him the stock described in the indictment. With the exception of the offer by radio and the letters mentioned, which contain no false representations or promises, no communications passed between appellant and Mrs. Hughes in Alameda County, and all promises or representations leading to the delivery of her stock were made in San Francisco. In view of these facts, appellant's contention that the venue of the offense alleged in this count should also have been laid in the latter county must be sustained.

Several witnesses who had borrowed money from the Colonial Loan and Discount Company and pledged stock as

security were permitted over objection to testify with relation to their transactions with the concern. Some testified to promises that their stock would not be sold, others that they were induced to pledge more stock on the representation that the market price of that originally pledged had declined, when in fact it had already been sold. Other witnesses related only the details of negotiations leading to the making of their loans and failed to testify that any false representations were made to them. The admission of this testimony is assigned as error. ▪ Evidence of similar transactions is admissible to show guilty knowledge or intent, it being held that in such cases the transactions sought to be shown must contain the material elements of the main case (*People* v. *Whiteman,* 114 Cal. 338 [46 Pac. 99] ; *People* v. *Bird,* 124 Cal. 32 [56 Pac. 639] ; *People* v. *King,* 23 Cal. App. 259 [137 Pac. 1076] ; *People* v. *Byrnes,* 27 Cal. App. 79 [148 Pac. 944] ). Such evidence is also admissible to establish a definite prior design or system which included the doing of the act charged as a part of its consummation. For that purpose it may be shown that the defendant made substantially the same representations to other persons (*Kornblum* v. *Arthurs,* 154 Cal. 246 [97 Pac. 420] ; *Bone* v. *Hayes,* 154 Cal. 759 [99 Pac. 172] ; *J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 278 [244 Pac. 916] ; *People* v. *Whalen,* 154 Cal. 472 [98 Pac. 194] ; *People* v. *Ward,* 5 Cal. App. 36 [89 Pac. 874] ). And as held in effect by the two cases last cited, it is not essential that such representations shall have resulted in the commission of a crime, it being sufficient if they tend to prove a scheme of the defendant which included the acts charged. ▪ In view of the above rules, the testimony to similar promises and representations was properly admitted, and that of the witnesses to whom such promises or representations were not made, while immaterial, was not prejudicial to appellant.

▪ It is next urged that the testimony of the defendant Jackson, an accomplice jointly indicted with appellant, and who, after entering a plea of guilty, was sworn as a witness for the prosecution, was uncorroborated. This witness testified in substance that he was told by appellant in the presence of the latter's private secretary that none of the stock pledged was to be sold unless its market value should fall fifteen per cent, in which case before a sale the

borrowers should receive twenty-four hours' notice, and he was further instructed to so advise the agents for the concern and prospective borrowers. He also testified to a conversation to the same effect between appellant and William J. Voss, another of appellant's agents, whose testimony to this extent corroborated that of the witness. A former employee of appellant testified that she was told by him to receive her instructions from the private secretary mentioned, who told her that the securities deposited by borrowers were held in the vaults in appellant's San Francisco office. As the court said in *People* v. *Yeager,* 194 Cal. 452 [229 Pac. 40, 49] : "It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the acts with the alleged crime may be inferred from the corroborating evidence in the case it is sufficient." Measured by this rule, the above testimony was sufficient corroboration of the accomplice. In order to show that the pledged stock was sold by appellant in the manner stated above, employees of certain stock-brokers were sworn and the books of the brokers admitted in evidence over objection. Appellant assigns this as error, and in support thereof cites *People* v. *Doble,* 203 Cal. 510 [265 Pac. 184]. This case does not sustain the contention. There the defendant was charged with conspiracy to violate the Corporate Securities Act (Deering's Gen. Laws, Act 3814) by taking subscriptions in California for the shares of a corporation without a permit to do so from the corporation commissioner. A summary of the entries in the books of the corporation was admitted in evidence, but the defendant denied all knowledge thereof. It was held that while the books were admissible for what they might show as to the excess of subscriptions over the permits, still, in view of the defendant's claim that he knew nothing of their contents, he was entitled to an instruction that an officer of a corporation is not criminally liable for the acts of other officers or agents thereof unless he authorized or consented to such acts. It was shown in the present case that the books constituted the brokers' records of the stock transactions with their customers, and that the entries were made by the witnesses or under their supervision in

the regular course of business. Under such circumstances the same were properly admitted (*People* v. *Woollacott*, 80 Cal. App. 275 [251 Pac. 826]; *People* v. *Kuder*, 98 Cal. App. 206 [276 Pac. 578]).

█ The further point is made that the court permitted improper cross-examination of appellant. The latter on his direct examination denied that he had told the witness Jackson and others to represent to prospective borrowers that the stock pledged would not be sold. On cross-examination the prosecuting attorney was permitted to inquire as to the salary paid the witness Jackson, and whether appellant was the sole proprietor of the Loan and Discount Company. The object of the cross-examination was to show appellant's relations with Jackson and the others mentioned by him, and while the subject of the inquiry does not appear to have been material the questions were not improper or prejudicial. █ In the same connection there was introduced by the prosecution a photographic copy of a letter which appellant admitted was signed by him. The letter was addressed to one Gunderson and stated that contrary to the latter's impression that the stock deposited with the company was sold, the fact was that no stock was sold unless requested by the borrowers, but was merely transferred to another name for the protection of both parties. The letter tended to contradict appellant's testimony that his agents were not instructed as claimed by the witness Jackson; and though it was not shown that the letter was mailed to the addressee it sufficiently appeared from appellant's testimony that while he signed the correspondence of the concern the same was customarily prepared and inferentially that it was subsequently mailed by his employees. In view of the testimony no prejudice was caused by the failure to first lay the foundation for the admission of the letter in evidence.

█ Two witnesses were permitted over objections to testify that loans were made by him for the concern, and that they were instructed to represent to borrowers that the pledged stock would not be sold, but kept in appellant's office. Neither witness testified that he was directly instructed by appellant to make such representation. In one case the instructions were given by the witness Jackson, and in the other by appellant's private secretary, to whom

he referred the witness for instructions. It is urged that there was no evidence that appellant directly authorized these witnesses to make such representations, and that their testimony was consequently incompetent. It is not necessary in order to hold the principal criminally liable that false representations made by his agent should have been directly authorized by him, it being sufficient that he consented thereto or knowingly and intentionally aided, advised, or encouraged the acts of his agent (*People* v. *Green, supra; People* v. *Doble, supra*). That the witnesses were appellant's agents is undisputed, and their testimony and that of other witnesses for the prosecution sufficiently supports the conclusion that their representations were consented to and encouraged by him.

■ The further point is made that the court erroneously rejected evidence that prior to the seizure of appellant's books by the corporation commissioner and the filing of a petition in bankruptcy against him, the borrowers upon the payment of their notes received their pledged securities or their equivalent in stock or cash. The offered evidence was clearly irrelevant and was properly excluded.

■ It is also contended that the remarks of the prosecuting attorney during the trial constituted prejudicial misconduct. Appellant's counsel in his closing argument criticised the prosecution for the length of time consumed in the trial. The prosecution in reply claimed that the delay was due to the former's frequent objections and in that connection referred to objections made upon the cross-examination of appellant, stating in substance that counsel for the latter feared a close investigation of his client's business methods. In addition to the above, appellant's counsel on several occasions objected to remarks made by the prosecution, which he assigned as prejudicial misconduct, and prior to the submission of the case moved the court to declare a mistrial, which motion was denied. In each instance where objection was made the jury was admonished to disregard the remarks of the prosecuting attorney, and they were instructed to the same effect at the conclusion of the trial. The remarks excepted to were not such that their possible effect could not be removed by an admonition, and we are satisfied that this result followed the court's instructions.

 Appellant proposed something over fifty instructions, and assignments of error are based upon the refusal of a number of those offered. Without reviewing them in detail, which would serve no useful purpose, it will be sufficient to say that all the questions involved were fully and fairly presented in other instructions given by the court.

 It is also claimed that certain of the court's instructions were erroneous. The jury was instructed that larceny by trick and device might consist of future promises. As hereinabove shown such an instruction was correct. They were also charged in substance that if they found that the agreements between the borrowers and appellant were *bona fide* loan transactions made without any intention on the part of appellant to use the transaction as a trick or device or a fraudulent means of obtaining possession of their property, then he had a right to dispose of the same at any time and no crime was committed; but should they find from the evidence beyond a reasonable doubt that the agreements were a trick and device used by appellant as a means of obtaining possession of the securities for the purpose and with the intention of feloniously appropriating and converting the same to his own use, then he had no right to do the acts complained of. The latter portion of this instruction to which appellant excepts was no more than a charge that if possession was obtained in the manner stated title to the securities did not pass. In that event, as above shown, the subsequent conversion of the property constituted larceny.

 The court also instructed that where a defendant is charged with crime, neither the acts nor statements of his agents or employees are chargeable against him unless such acts and statements are authorized by him. Appellant's objection to the instruction is that the jury should have been told that such acts or statements, in order to be chargeable to the principal must be directly authorized by him. Notwithstanding language to that effect in some of the cases, we are of the opinion that if such acts or statements are authorized, whether the authority is given directly or indirectly is immaterial, and that the instruction correctly stated the law. The jury was instructed on the subject of conspiracy and it is claimed that the instructions

were not justified by the evidence. It is not contended that they were not correct statements of law, and the record contains some evidence tending to prove a conspiracy between appellant and his co-defendants. While instructions not applicable to the facts are erroneous (8 Cal. Jur., Criminal Law, sec. 606, pp. 628, 629), to constitute grounds for reversal they must have resulted in prejudice to the defendant (*People* v. *Schmah*, 62 Cal. App. 192 [216 Pac. 624]; *People* v. *Ybarra*, 68 Cal. App. 259 [228 Pac. 868]). Here, after carefully stating the facts necessary to constitute conspiracy, the court charged that appellant would not be responsible for the acts or declarations of either of his codefendants unless the jury found from the evidence beyond a reasonable doubt that a conspiracy existed or that such acts or declarations were authorized by him. Prejudice is not presumed (8 Cal. Jur., Criminal Law, sec. 606, p. 628), and no reasonable ground appears for the conclusion that the jury was misled or confused by the instructions.

There is no merit in the claim that title to the stock deposited by the borrowers passed to appellant, and that consequently the offense of larceny was not proved. The notes, as well as the testimony, show that the stock was pledged and while appellant was given the power to sell under certain circumstances, this was not equivalent to a transfer of title to him. That he converted the pledged stock to his own use is not disputed, and the evidence shows beyond a reasonable doubt that this was the culmination of a fraudulent scheme whereby he obtained possession with the felonious intention of appropriating the property.

While it will be necessary for the reasons stated to reverse the judgments entered upon the sixth, seventh, eighth and ninth counts of the indictment, the verdicts upon the remaining counts were sufficiently sustained by the evidence, and the record discloses no error which reasonably supports the conclusion that the same resulted in a miscarriage of justice. The judgments entered upon the sixth, seventh, eighth and ninth counts of the indictment are accordingly reversed, and the judgments entered upon the first, second, third, fourth, fifth and tenth counts therein with the orders denying appellant's motion for a new trial thereof are affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 26, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 11, 1930.