THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* NOEMÍ RODRÍGUEZ DE ESCOBAR, Defendant, and Appellant.

No. 11264. Argued April 5, 1946.—Decided June 21, 1946.

*R. Rivera Zayas* for appellant. *E. Campos del Toro, Attorney General, Luis Negrón Fernández, First Assistant Attorney General,* and *J. Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Appellant was convicted of the crime of embezzlement (felony) in that she misappropriated the sum of $3,200 belonging to Dolores Cabanillas, which sum was delivered to her by the latter for the purchase of lottery tickets.

Appellant complains that the verdict is contrary to law and the evidence and, consequently, that the judgment is erroneous. The evidence is conflicting. That for the prosecuting attorney tends to show that the prosecutrix met appellant in the month of May 1944, and thereafter entered upon a certain business concerning the purchase and sale of lottery tickets. Appellant at first brought her 20 to 40 lottery tickets each week which she bought from different agencies at $5.20 and $5.30 and sold them to her at $5.40 and later at $5.50 a ticket. The prosecutrix in turn sold them to the ticket vendors at the rate of $5.80 and they sold them at $6 each. So

appellant had a profit of from 10 to 20 cents per ticket and the prosecutrix of 20 cents. At the beginning the prosecutrix paid for the tickets when appellant delivered them to her, but the business gradually increased to the extent of buying 200 tickets each week from appellant. The latter then pointed out that she did not have sufficient funds and asked the prosecutrix to give her the money to buy them. In view of the business relations existing at that time between them, the prosecutrix was induced to trust appellant for which reason she was not remiss in delivering in advance, upon the handing of a receipt, the money for the tickets which she had to buy. The business continued under normal conditions until the morning of August 12, 1944, when appellant came to the prosecutrix's home and under the pretext that she was in a hurry because she was traveling in a taxi, obtained from the latter the amount of $3,200 for the purchase of tickets, without signing the receipt which she promised to do later. Lest appellant's feelings be hurt if under such circumstances the prosecutrix demanded the receipt immediately, she delivered the money in the presence of her sister and of Gabriel Rodríguez, a ticket vendor. The defendant had to deliver the tickets on August 21 as they belonged to the drawing of the 23d and the vendors needed two days to dispose of them. Appellant did not sign the receipt. On Monday the 14th, the prosecutrix called her on the telephone but her husband answered that she was away from San Juan buying tickets. On Saturday she again called up appellant and her husband told her to be patient that she was out of town buying tickets. Two or three hours after the second call the prosecutrix again called the grocery and the husband replied: "I just had a call from her and she told me that she was immediately leaving for San Juan with the tickets." Later on that same day the prosecutrix's maid came to tell her that appellant's grocery had been attached. The prosecutrix went immediately to the grocery but did not find the appellant. She then

went to Caguas to Mr. Antonio Longo's house together with her sister, her father and Mr. Roberto H. Todd, Sr., and found the appellant on the porch together with her husband. Appellant told her to be patient that her money was safe but the prosecutrix insisted that she should pay her immediately. Appellant again told her to be calm but when the prosecutrix insisted on the return of the money appellant called her to one side and taking a key told her: "Come with me, I am going to give you your money." Her husband then called her and after having a talk (appellant with her husband) appellant told the prosecutrix: "Come tomorrow at 8:00 o'clock, I will give you the money." Next day, when the prosecutrix was on her way to Caguas she met appellant on the road going in the opposite direction. The prosecutrix called her and appellant offered to sign a promissory note for $10,000 which proposition was refused because appellant did not owe her that amount. Appellant then offered a security to her. They went to the office of Attorney Benicio Sánchez, the prosecutrix's attorney, and there appellant admitted that she had received the money for the purchase of tickets and proposed Mr. Antonio Longo as surety and was immediately accepted. Attorney Sánchez gave her all day to furnish the guaranty, but on leaving she turned back and asked the attorney if he would not rather have payment. This was accepted and she promised to pay at 1:30 on that same day, but the prosecutrix did not see her again until the day of the trial.

In order to prove the intent to defraud, the prosecuting attorney, over the objection of the defendant, introduced evidence of other transactions carried out by appellant relative to the purchase of tickets of the same nature as the one involved in this case. Among these, there is one connected with the prosecutrix, which is the object of another complaint, which we shall presently explain:

On Friday, August 11, 1944, appellant came to the house of the prosecutrix and told her that an employee of hers

called Nino but whose name is Benigno Santiago, told her that he could obtain in Yauco 136 tickets of the drawing of August 16th, that as she had no money to buy them she offered them to the prosecutrix. The latter answered that she wanted to see Nino and went to appellant's grocery. Appellant asked Nino whether it was true that he had 136 tickets in Yauco. Nino seemed remiss in answering and the prosecutrix refused to give the money without some guaranty, but appellant stated that it seemed that the prosecutrix did not trust her and then the prosecutrix prepared a receipt which appellant signed and gave her the amount of $748 which appellant delivered to Nino telling him: "Go to Yauco and get those tickets immediately." It was agreed that Nino should return the next day with the tickets but on Saturday, about 10:00 o'clock in the morning, appellant showed the prosecutrix a telegram which Nino had sent from Yauco, informing her that he had not obtained the tickets for the drawing of the 16th but for the drawing of the 23d and that he would bring them on the 15th. Neither the tickets nor the money were ever received by the prosecutrix and since on Tuesday the 15th the grocery was attached, the prosecutrix began to take steps to recover both amounts, that is, the $748 and the $3,200 which she had given appellant.

Benigno Santiago testified as a witness for the prosecution, that he was an employee of appellant; that he had left the job about a month and a half ago and was living in Yauco; that on the 10th of August he came to Santurce to see his sister and on the 11th visited the appellant who asked him to stay, because she needed $748 and was going to ask the prosecutrix for them; that in order to obtain the money she was going to tell her that he had some tickets in Yauco. Nino replied that he did not have any such tickets but appellant told him that she would deliver them to the prosecutrix on the following day. When the latter came to the grocery appellant signed the receipt and received the money, passing it to Nino in the presence of the prosecutrix but as

the latter left, appellant asked him for the money and he gave it back to her. She wrote the telegram in question and handed it to him with 50¢ to send it from Yauco on Saturday the 12th. To that same effect the prosecuting attorney presented the testimony of two other persons from whom the appellant had taken money for the purchase of tickets and had misappropriated it.

Mr. Roberto H. Todd, Sr., and Attorney Benicio Sánchez also testified for the prosecution, corroborating the testimony of the prosecutrix.

Appellant denied that she had received the $3,200 in question. As to the affair with Nino she denied all responsibility and stated that she had acted as his surety and that the business was between him and the prosecutrix, and that she had not shared the money. She likewise denied having written the telegram and tried to explain the business transactions with the other persons who alleged had been defraud by her. Upon describing her business relations with the prosecutrix she testified:

"Our business relation consisted in the buying and selling of lottery tickets. She gave me the money and I bought the tickets at a certain price, then she sold them at a higher price to the ticket vendors and the profit was divided between us in a certain proportion. In order to keep this account her father prepared a notebook where the amount of tickets bought and sold was entered as well as the amount of the money delivered. Afterwards we divided the profit. A close relation ensued until this incident took place."

She denied that Mr. Roberto H. Tood was present during the conversation that she had with the prosecutrix at the house of Mr. Antonio Longo, and upon referring to this conference she stated, in brief, that it was not true that she offered on that occasion to pay any money to the prosecutrix. She admitted that at the request of the prosecutrix, on the day after the conference at the house of Mr. Antonio Longo, she went with her to the office of Attorney Benicio Sánchez, but that it is not true that she admitted in the latter's presence

that she had received the amount of $3,200; that she admitted that she owed her $1,077 which she had in her possession [1] plus the $748 delivered to Nino for whom she had become surety, that is, a total of $1,825; that the attorney asked her to give security for said amount but she answered that since the grocery had been attached she would be unable to find anyone to act as her surety; that she believed that the guaranty was unnecessary because they were in business together and she had never before been asked to furnish any; that she never offered to obtain security from Mr. Antonio Longo or to bring the money if she could not furnish the guaranty.

On cross-examination, appellant admitted that she was not married to Escobar and that the grocery which she alleged belonged to her and her husband was in the name of her sister-in-law, Francisca Laureano Escobar, who did not know how to read or write and had been living in New York more than one year. Lastly she presented certain documentary evidence tending to show that the other persons who alleged to have been defrauded were subsequently compensated by her.

Such was the evidence which the jury had before it. It is conflicting as to certain particulars, but it is unquestionable that the conclusion of the jury is warranted by the evidence, and this being so, we can not agree with the appellant that the verdict is contrary to the law and the evidence.

---

[1] Referring to the amount of $1,077 which she stated all the time to have in her possession and which belonged to the prosecutrix, she testified that that amount was devoted to the purchase of tickets ''of another kind'' and since the prosecutrix had taken that amount as a loan and had to pay interest on it the defendant paid her $70 weekly to meet that interest. To that effect she presented in evidence a notebook that contained several receipts of payments made in favor of the prosecutrix and among them there was one written and signed by the latter which reads thus: ''Received from Doña Noemí R. de Escobar the amount of 500 tickets of the drawing of August 16th, regular drawing No. 295, keeping in her possession the amount of $1,825 for which I receive $70 weekly. (Signed) Lolín Cabanillas.''

■ In a criminal trial evidence of an offense different from that charged in the information is not admissible. But this rule has an exception as equally well settled as the rule itself. Under this exception, evidence of similar transactions contemporaneous with the facts of the offense charged, is admissible to show a deliberate scheme or intent to defraud. *People* v. *Pérez,* 47 P.R.R. 724; *Thorp* v. *People,* 129 P. (2d) 296; *Bacino* v. *People,* 90 P. (2d) 5; 2 Wigmore, Evidence (3d ed., 1940), § 304, p. 202. Therefore, the court did not err in admitting in evidence the transactions involving Benigno Santiago and witnesses Camacho and Cordero who testified that they had been prejudiced, and the fact that the offense charged in the transaction with Benigno Santiago was false representation, while that of the other two witnesses was false representation, while that of the other two witnesses was of a purely civil nature did not bar its admission. *People* v. *Robinson,* 290 Pac. 470.

■ Appellant complains that the lower court admitted in evidence the testimony of Attorney Benicio Sánchez and invokes § 402 of the Code of Civil Procedure, alleging that the statements made by her to the attorney were privileged communications as to which he could not testify without her consent. We have already explained how the conversation with Attorney Benicio Sánchez took place and it is clear that appellant was not his client and therefore her communications were not privileged. *Piercy* v. *Piercy,* 124 Pac. 561.

■ Appellant complains of the instructions given by the court. She contends that the charge was not a correct statement of the law, that it failed to make any mention of the fiduciary relation which is an essential element to the offense of embezzlement; that at most, the instructions are contradictory and must have necessarily confused the jury. Lastly, that the lower court erred in failing to give three of the four special instructions sought by the defendant.

Upon referring to the offense charged against the defendant, the judge began by defining the crime, as it appears in

§ 445 of the Penal Code, as follows: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." It is true that he afterwards instructed the jury in the sense that if the agreement between the defendant and Miss Cabanillas was to the effect that the money received by the former was to be used solely and exclusively for the purchase of lottery tickets and not for other purposes, that if according to that contract the defendant could not use that money for her own benefit, but for the purchase of tickets, in that case, if the jury reached the conclusion beyond a reasonable doubt that she misappropriated the money fraudulently, then the offense committed was embezzlement. But immediately thereafter he continued the charges: "If on the country the jury believe . . . that the contract between the parties was to the effect that Miss Cabanillas delivered the money to the defendant with the intention that she could use the money for whatever she wished, she was not bound by virtue of the agreement or the contract to buy tickets but she could use the money for whatever she wished, in other words, that the relation between her and Miss Cabanillas was solely and exclusively that of lender and borrower, that is, that immediately after she received the money she became solely and exclusively a borrower who could use it as she pleased, with the only obligation of returning that money to Miss Cabanillas; that between them there existed no other relation than merely that of creditor and debtor, a loan contract, then it is not embezzlement."

We agree with appellant that the first part of this instruction is not as clear as it should be, since it is compatible with the hypothesis that the defendant received the money as a loan under the condition that she would invest it exclusively in the purchase of lottery tickets. The second part is not clear either, since it tends to condition the relation between lender and borrower in the sense that according to the contract the latter was not bound to invest the money in lottery

tickets. It could have been agreed between the parties that the amount of the loan should be invested by the borrower in lottery tickets. That agreement did not divest the transaction of the characteristic of a loan and the non-fulfillment of such personal obligation does not constitute any offense. But in order to determine the sufficiency of the instructions they should be taken as a whole, so that any inaccuracy or ambiguity in one part may be clarified by another. And if we examine the instructions again, we shall see that at the end, upon referring to the crime of embezzlement, the court said:

"In fine, gentlemen of the jury, if you believe from the evidence introduced in this case and believe it beyond a reasonable doubt, that Miss Dolores Cabanillas entrusted to the defendant herein the amount of $3,200 or any part of that amount, provided it should be more than $100, and that Miss Cabanillas entrusted that amount to the defendant for the sole purpose of buying lottery tickets, and for that purpose alone, if you believe beyond a reasonable doubt from the evidence introduced herein, that according to the agreement and to the transaction between Miss Cabanillas and the defendant, the latter was not entitled to use those funds except for the purpose of buying lottery tickets, and if you believe also, beyond a reasonable doubt, that she violated the contract knowing that she was committing an act which was prohibited under the agency entrusted to her, if you believe it and also that she violated said agency, and that she misappropriated the money with the intent to defraud Miss Cabanillas, it is your duty to find the defendant guilty of the crime of embezzlement.

"If the gentlemen of the jury believe that according to the evidence introduced in this case the agreement or contract between Miss Cabanillas and the defendant was a loan contract, that it was a contract by virtue of which the defendant became the owner of the money which Miss Cabanillas delivered to her, and that she was entitled to appropriate the money and use it in her own behalf and that the relation between the defendant and Miss Cabanillas was that of lender and borrower, or if you have any doubt whatsoever as to these facts or that there is lacking some element to constitute the offense of embezzlement, as the court has explained it to you, it is your duty to find the defendant not guilty."

In our opinion, the instructions just quoted dispelled any doubt which may have arisen in the mind of the jury by reason of the inaccuracy of the preceding instructions.

As to the three special instructions refused by the court, the first and second were substantially included in the general instructions. As to the third one, it was not supported by the evidence, for the defendant denied that she had received the amount of $3,200 and at no time offered any evidence to prove that she did not return the money or any part thereof "because of causes which were not of a criminal character." The court therefore did not err in refusing to deliver the instructions.

Under the sixth assignment of error appellant complains of the instruction relative to the other transactions presented in evidence for the purpose of proving the intent to defraud. Appellant refers only to a part of the instruction on that particular. We shall copy the entire instruction:

"In this case, gentlemen of the jury, evidence has been presented and admitted by the court, as to other transactions of a similar nature performed by the defendant tending to show that the defendant made transactions similar to those involved in this case. In the first place, I am referring to the testimony of Camacho and Juan Deogracia, and you must determine whether in point of fact those transactions were carried out. If they were, if you reach the conclusion that they were made, and you reach said conclusion beyond a reasonable doubt, the court instructs you then not to take into account the fact that the defendant carried out those transactions and based solely on that fact convict her of the crime now charged against her. If you reach the conclusion beyond a reasonable doubt that she carried out a similar transaction, and if you reach the conclusion, also, beyond a reasonable doubt, that she did it also with the intent to defraud, then that transaction can not be used by you for the purpose of convicting the defendant of this offense on the ground that she performed those transactions. But you may use it, gentlemen of the jury, in order to determine whether in this particular case which is under investigation today there existed the intent to defraud, if you reach the conclusion that the defendant

performed those other transactions above referred to and that in those transactions there existed between her and Camacho and Deogracia the relation of principal and agent, and that in those transactions she had the intention to defraud Camacho and Deogracia, if you believe it beyond a reasonable doubt, then you may use that evidence for the purpose of determining whether in this case there existed a definite intent to defraud. You may consider those transactions for the purpose of determining together with the evidence introduced in this case, and together with the testimony of Benigno Santiago, Attorney Benicio Sánchez Castaño, and Mr. Todd, and of the other persons who have testified in this case, whether as a whole there existed in this case a definite intention to defraud.''

A mere reading of the entire instruction is sufficient to show that it is correct. *People* v. *Pérez, supra; Thorp* v. *People, supra; Bacino* v. *People, supra; People* v. *Robinson, supra;* Wigmore, Evidence, *op. cit.*

■ Upon trying to identify a certain document attorney for the defendant asked the latter: ''What is this document?'' The prosecuting attorney objected but before the court ruled on the objection the defendant answered: ''This document is a contract of a business entered upon by Miss Lolín Cabanillas and myself relative to lottery tickets.'' The prosecuting attorney moved the court to strike the answer and the judge held:

''Whatever are the relations between the witness and Miss Cabanillas, whatever they may be, they constitute a contract. It may be a contract of depositum, a loan contract, a contract of agency, but whatever it may be, it is a contract. The defendant will argue that it is a loan contract and the prosecuting attorney will contend that it is a depositum or an agency contract, but whatever it may be, it is a contract and it does not lessen the criminal responsibility if all the elements of the crime of embezzlement are present.''

The defense then stated:

''That is the opinion of the court. There are contracts between debtors and creditors and such contracts do not make the crime of embezzlement.''

The court then gave the following instruction to the jury:

"The Court instructs you now that the law in this case shall be dictated by the Court and that the law is what the Court says it is, and if the Court is mistaken, in case of conviction, it rests with the Supreme Court to decide whether the Court erred. The statements of the attorney may not be taken as if they constituted an expression of the law but the law is what the Court tells you. The Court will instruct you that there may exist the relation of creditor and debtor and you will be amply instructed on this point. If it is a loan contract there is no embezzlement because the money belongs to the borrower and he may do with it whatever he pleases, but there may exist a contract of agency or of depositum and in such case the agent or the depositary has no right whatsoever to misappropiate the money. If the money is misappropriated fraudulently then he commits the crime of embezzlement. That is the law and as to this, the Court shall instruct you more fully in due time."

We do not see that the court committed any error in making those statements when deciding the motion of the prosecuting attorney to strike defendant's answer whereby it explained the nature of the document, especially if the instruction copied above in relation to the incident and which was transmitted immediately to the jury is taken into consideration.

█ Appellant complains that at the close of the testimony of the witness for the prosecution, Benigno Santiago, she asked that the whole testimony be stricken out and that the jury be instructed not to consider it in connection with this case and that the judge, in overruling the motion, stated:

"One of the elements of the crime of embezzlement which must be proven by the prosecuting attorney is the intention to defraud and it is fundamental that in a charge of embezzlement, other offenses of embezzlement committed by the same defendant may be presented in order to show the fraudulent intent, and this witness testified that the defendant made him send a telegram from Yauco in connection with the $748, a telegram which to a certain extent involved a ficticious transaction, as to certain lottery tickets which she never possessed and that it was merely a device between them that the

telegram be sent and this tends to show that it was the purpose of the defendant to defraud Miss Cabanillas. If the jury believe this evidence, the jury may infer from it that there existed the intent to defraud not only $748 but, the amount of $3,200 as well. The Court refuses to strike it out."

As revealed by the instruction just copied, the court did not state that the testimony of Benigno Santiago mentioned in the contested ruling was true. All it did was to summarize the testimony of said witness, which disclosed that the telegram was false. The judge was very careful in saying to the jury: "*If that evidence is believed, the jury may infer from it that there existed the intent to defraud not only $748 but the amount of $3,200 as well.*"

The defense moved for a reconsideration which was denied, and the court stated that it would specifically instruct the jury as to the only purpose for which it could consider the transaction of $748, and so it did.

The lower court did not commit the error assigned.

 Appellant urges that the court *a quo* erred in permitting her to be cross-examined as to the transactions between her and other persons in order to prove the intent to defraud, when she had not been subject to direct examination on that matter.

The accused is not bound to testify. The law grants him the privilege of not incriminating himself. However, if he chooses to testify, he will be examined, of course, on matter material to the issue, and his answer may tend to incriminate . him. This principle has given rise to the rule that if the accused chooses at the outset to testify, he waives the privilege of not incriminating himself and is bound to answer any relevant question, even if the matter on which he is examined has not been the subject of direct examination, except where the cross-examination would merely impeach his credibility. 8 Wigmore, Evidence (3d ed., 1940), § 2276, p. 440; cf. *People* v. *Román,* 18 P.R.R. 217, 228.

■ The eleventh assignment of error does not merit serious consideration. It will suffice to reproduce here the incident:

"District Attorney: Do you know any person who stood with you in front of the lots next to 'El Mundo' and near where the Federal Land Bank was, and to whom you said: you may lend me those $1,500 because these lots are mine and I am going to erect a ten-story building here?

"Defense: Objection.

"District Attorney: He has presented his witness as an innocent person and I am investigating the credibility of the defendant.

"Defense: I am not object to the District Attorney challenging my witnesses. That is a fantastic question and I object."

After defendant's objection the district attorney did not insist and changed the subject of his cross-examination. We do not see how the defendant could have been prejudiced by this question, which her attorney, quite properly, called fantastic.

■ Appellant assigns as error the fact that the court denied her motion to the effect that the district attorney, in view of the proceedings in the case concerning the appropriation of the $748, be called to testify as defendant's witness, as to whether in said case he had issued two orders of arrest, one against Benigno Santiago, which was later set aside, and another of a later date, against the defendant. The purpose of this evidence was, according to the defense, to impeach the credibility of Benigno Santiago and Lolín Cabanillas, who had testified at the trial that no order of arrest had been issued against Benigno Santiago in the case of the $748. Whether or not these two orders had been issued in said case, was a matter collateral to that on which the defendant was being tried. As to Lolín Cabanillas, the ruling of the court was not erroneous, for the simple reason that evidence tending to contradict a witness in connection with a collateral fact is not admissible to impeach his credibility. 3 Wigmore, Evidence (3d. ed., 1940), § 1020, p. 692 *et*

*seq.* However, in regard to Benigno Santiago, the surrounding circumstances are different. The evidence offered tended to prove that an order of arrest had been issued against him as the alleged author of the crime related to the $748 and that the order of arrest was later set aside, and subsequently another order was issued against the appellant. The purpose of this evidence was to show certain interest of the part of Benigno Santiago to testify against the defendant, thereby exonerating himself from the crime and placing all the blame on her. Upon proving such interest on the part of the witness, for which purpose evidence of his arrest was admissible, 3 Wigmore, Evidence (3d ed., 1940), § 1022, p. 697, his credibility was impeached. Consequently, the lower court erred in failing to admit the evidence offered insofar as this witness is concerned. But Benigno Santiago testified at the trial at length how he helped to deceive Lolín Cabanillas by receiving from her the $748 which he turned over to the defendant for the alleged purchase of tickets in Yauco and by sending the false telegram, knowing it all was a trick of the defendant to obtain the money. Furthermore, the same witness testified that by reason of the incident of the $748 he was kept in custody at police headquarters a whole night and part of a day. This being so, the evidence offered by the defendant would not have conveyed to the jury any further information as to the interest or prejudice of the witness than what the jury already knew through the testimony of Benigno Santiago himself. Under these circumsances, the error did not prejudice the substantial rights of the defendant and, consequently, it does not call for the reversal of the judgment.

Appellant argues that the lower court erred in permitting the district attorney, over defendant's objection, to present in rebuttal witnesses Máximo Camacho and Juan Deogracia Cordero and a document which he should have presented in direct examination.

We concede that the evidence in controversy was not properly rebuttal; but the order of presenting evidence rests in

the sound discretion of the trial court and, unless prejudice is shown, this court will not disturb that discretion on appeal. In the present case the defendant had an opportunity to cross-examine said witnesses and did cross-examine them at length. The defense went still further and in an attempt to rebut their testimony, called Attorney Coballes Gandía to the witness stand. Under such circumstances, this assignment of error is untenable.

The fifteenth error refers to the ruling of the trial court denying a motion for a new trial. This motion was based on the 14 errors already discussed and, since we have reached the conclusion that such errors were not committed, the court did not err in dismissing the motion for a new trial.

Judgment is affirmed.

Mr. Justice Todd, Jr., did not participate herein.